IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CV-372-D

ROSEALENE STOCKS, )
)
Plaintiff, )
)
v. )
) **ORDER**
COMMUNITY HEALTH )
INTERVENTION & SICKLE CELL )
AGENCY, INC., MARY MCALLISTER, )
and DELVIN MCALLISTER, )
)
Defendants. )

On December 20, 2018, Rosealene Stocks ("Stocks" or "plaintiff") filed an amended complaint against Community Health Intervention & Sickle Cell Agency, Inc. ("Community Health"), Mary McAllister ("Ms. McAllister"), and Delvin McAllister ("Mr. McAllister"; collectively "defendants") [D.E. 31]. On January 3, 2019, defendants moved to dismiss Stocks's amended complaint for failure to state a claim upon which relief can be granted [D.E. 32] and filed a memorandum in support [D.E. 33]. On January 24, 2019, Stocks responded in opposition [D.E. 34]. On February 7, 2019, defendants replied [D.E. 35]. As explained below, the court grants in part defendants' motion to dismiss and declines to exercise supplemental jurisdiction over Stocks's remaining state law claims.

I.

Community Health is a non-profit organization that provides care and education for individuals and families affected by sickle cell disease, human immunodeficiency virus ("HIV"), other sexually transmitted diseases, diabetes, and other health conditions. See Am. Compl. [D.E. 31] ¶ 7. In 2002, Community Health hired Stocks as a receptionist. See id. ¶ 14. Ultimately, Stocks

became the Operations Manager/Grant Manager and, in that role, became familiar with Community Health's finances and compliance with state and federal regulations. See id. ¶ 15. Mr. McAllister is the Deputy Director/Chief Executive Officer ("CEO") of Community Health. See id. ¶ 8. Ms. McAllister is the Executive Director of Community Health and is Mr. McAllister's mother. See id. ¶ 9. Stocks alleges that Mr. McAllister and Ms. McAllister together "completely dominate[]" Community Health. Id. ¶ 12.

In early 2018, Stocks began to complain to management, including to Mr. McAllister and Ms. McAllister, concerning alleged unlawful wage practices, unlawful employment practices, misuse of federal and state funds, submission of false information to state and federal regulators, and violation of Community Health bylaws and corporate formalities. See id. ¶¶ 17–18. Stocks alleges that two male employees, including Community Health's Chief Financial Officer, made similar complaints to management during this time. See id. ¶ 19. Around this time, the North Carolina Department of Health and Human Services ("NCDHHS") and the United States Health Resources and Services Administration ("HRSA") began to investigate Community Health because of Community Health's potential misuse of state funds and other possible violations. See id. ¶¶ 20–22. In February 2018, HRSA recommended that Community Health's Board of Directors terminate Mr. McAllister for poor performance and misuse of public funds, terminate Ms. McAllister, and briefly close to get "its affairs in order." Id. ¶ 23. Community Health's board of directors promptly carried out the recommendations. See id. ¶¶ 24–26, 28.

In March 2018, Stocks alleges that Mr. McAllister and Ms. McAllister organized a "coup" of Community Health's board. See id. ¶ 29. On March 23, 2018, the board reinstated Mr. McAllister and Ms. McAllister to their former positions at Community Health. See id. ¶ 30. On that same day, Stocks alleges that Mr. McAllister entered Stocks's office and informed her, in a

2

threatening manner, that she could leave. See id. On March 26, 2018, Mr. McAlister informed Stocks that she was placed on administrative leave with pay. See id. ¶ 31. Stocks did not return to Community Health, but she allegedly provided more information to government regulators concerning the defendants' conduct. See id. ¶ 32. On April 10, 2018, defendants informed Stocks that they decided to terminate her employment because of organizational restructuring. See id. ¶ 33. Defendants did not terminate any male employees at this time, even those individuals who complained about the issues that led to the HRSA's investigation. See id.

Stocks timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and alleged unlawful discrimination on the basis of sex and retaliation. See id. ¶ 38. On April 30, 2018, Stocks received a notice of rights to sue from the EEOC. See id.; [D.E. 31-1]. On December 20, 2018, Stocks filed an amended complaint alleging wrongful discharge in violation of North Carolina public policy, tortious interference with contract, civil conspiracy, and sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). See [D.E. 31] ¶¶ 39–76. Stocks seeks backpay, compensatory damages, and punitive damages. See id. at 13.

II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570;

3

Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's allegations must "nudge[ ] [her] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may take judicial notice of public records without converting the motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

A.

Stocks alleges Title VII sex discrimination and retaliation claims against Community Health [D.E. 31] ¶¶ 65–73. In relevant part, Title VII prohibits employers from discharging "any individual ... because of such individual's ... sex." 42 U.S.C. § 2000e-2(a)(1). Without direct evidence of sex discrimination, Stocks must show that (1) she is a member of a protected class, (2) she suffered adverse employment action, (3) her performance met her employer's legitimate expectations at the time of the adverse employment action, and (4) the action occurred under circumstances permitting

4

a reasonable inference of sex discrimination. See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (en banc), abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338 (2013); Howard v. Coll. of the Albemarle, 262 F. Supp. 3d 322, 331 (E.D.N.C. 2017), aff'd, 697 F. App'x 257 (4th Cir. 2017) (per curiam) (unpublished); McDougal-Wilson v. Goodyear Tire & Rubber Co., 427 F. Supp. 2d 595, 611 (E.D.N.C. 2006).

Stocks need only plausibly allege a statutory claim, not a prima facie case. See McCleary-Evans v. Md. Dep't of Transp., 780 F.3d 582, 585–88 (4th Cir. 2015). Thus, Stocks must plausibly allege that Community Health took an adverse employment action against her because of her sex. See id. at 585. However, empty allegations of a causal connection between an employee's sex and the alleged discrimination do not state a plausible claim. See id. at 585–86; Brown v. Goodwill Indus. of E. N.C., Inc., 361 F. Supp. 3d 558, 563–64 (E.D.N.C. 2019). Rather, the employee must plausibly allege that the motive to discriminate was at least one of the employer's motives. See Nassar, 570 U.S. at 343; Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 216 (4th Cir. 2016); Boney v. Trs. of Cape Fear Cmty. Coll., 366 F. Supp. 3d 756, 765 (E.D.N.C. 2019); Huckelba v. Deering, No. 5:16-CV-247-D, 2016 WL 6082032, at *3 (E.D.N.C. Oct. 17, 2016) (unpublished).

As for Stocks's Title VII sex discrimination claim, Stocks alleges that her sex was a "determinative factor" in Community Health's decision to discharge her. Am. Compl. [D.E. 31] ¶ 69. The court need not accept this allegation as true. See Iqbal, 556 U.S. at 678–79; McCleary-Evans, 780 F.3d at 585–88. Stocks also alleges that she complained about unspecified sex discrimination at Community Health and that Mr. McAllister and Ms. McAllister displayed animus towards her because of her sex. See Am. Compl. ¶¶ 18, 34, 36. These conclusory allegations likewise are factually insufficient to state a plausible claim. See Iqbal, 556 U.S. at 678–79; McCleary-Evans, 780 F.3d at 585–88.

5

Finally, Stocks alleges that male employees, including the Chief Financial Officer and Director of Prevention Services, complained about alleged sex discrimination and that Community Health did not discharge them. See Am. Compl. ¶¶ 19, 30–31, 33–34. However, Stocks also alleges that her involvement in the investigations into Community Health "heightened" the "unlawful animus" that Mr. McAllister and Ms. McAllister had towards her. Id. ¶ 21; see id. ¶¶ 27, 37. As between this "obvious alternative explanation" for Mr. McAllister's and Ms. McAllister's conduct towards Stocks and "the purposeful, invidious discrimination [Stocks] asks [the court] to infer, discrimination is not a plausible conclusion." Iqbal, 556 U.S. at 682 (quotation omitted); see Woods v. City of Greensboro, 855 F.3d 639, 647 (4th Cir. 2017); McCleary-Evans, 780 F.3d at 588. Moreover, Stock's involvement in the investigations differentiates Stocks's circumstances from those of her alleged comparators. See, e.g., Haynes v. Waste Connections, Inc., 922 F.3d 219, at *3 (4th Cir. 2019); Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010) (per curiam) (unpublished). For example, Stocks does not allege that these male employees participated in the NCDHHS and HRSA investigations into Community Health. Stocks therefore does not plausibly allege that Community Health discharged her because of her sex. Accordingly, the court grants Community Health's motion to dismiss Stocks's Title VII sex discrimination claim.

As for Stocks's Title VII retaliation claim, to state a prima facie claim, Stocks must allege that (1) she engaged in protected activity, (2) Community Health took an action against her that a reasonable employee would find materially adverse, and (3) a causal connection existed between the protected activity and the adverse employment action. See Ray v. Int'l Paper Co., 909 F.3d 661, 669 (4th Cir. 2018); Savage v. Maryland, 896 F.3d 260, 276 (4th Cir. 2018); DeMasters v. Carilion Clinic, 796 F.3d 409, 416 (4th Cir. 2015); Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 250 (4th Cir. 2015); Boyer-Liberto v. Fountainebleau Corp., 786 F.3d 264, 281 (4th Cir. 2015) (en banc). To

survive a motion to dismiss under Rule 12(b)(6), a plaintiff need only plausibly allege a statutory claim. See Woods, 855 F.3d at 646–48; McCleary-Evans, 780 F.3d at 585–88. Thus, Stocks must plausibly allege that she engaged in activities that are protected under Title VII and that Community Health discharged her because she engaged in such activities.

Title VII's retaliation provision prohibits an employer from discriminating against any individual "because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Title VII protects two kinds of activities: opposition and participation. See id.; Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998). "[O]ppositional activity must be directed to 'an unlawful employment practice' under Title VII . . . ." DeMasters, 796 F.3d at 417; see Boyer-Liberto, 786 F.3d at 282; Bonds v. Leavitt, 629 F.3d 369, 384 (4th Cir. 2011); Laughlin, 149 F.3d at 259. An "employee is protected when she opposes not only employment actions actually unlawful under Title VII but also employment actions she reasonably believes to be unlawful [under Title VII]." DeMasters, 796 F.3d at 417 (quotation and alteration omitted); see Boyer-Liberto, 786 F.3d at 282. Participation activity is defined in Title VII as "making a charge, testify[ing], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a); see Laughlin, 149 F.3d at 259.

Stocks does not plausibly allege that she engaged in protected activity. Stocks did not oppose any activity that either was unlawful under Title VII or that Stocks reasonably believed was unlawful. Simply put, complaining to Community Health's management about potential misuse of funds, misstatements to regulators, or other violations of bylaws and corporate formalities do not constitute protected activity under Title VII. See, e.g., Savage, 896 F.3d at 276. Moreover, Stocks's

7

conclusory allegations that she complained about sex discrimination to management do not make her retaliation claim plausible. As for participation activity, Stocks does not allege that she made a charge or testified, assisted, or participated in any manner in any Title VII proceeding or investigation. Stocks also does not allege that the state and federal investigations in which she did participate concerned any conduct unlawful under Title VII. Thus, Stocks does not plausibly allege that Community Health discharged her because she engaged in protected activity under Title VII. Accordingly, the court grants Community Health's motion to dismiss Stocks's Title VII retaliation claim.

B.

As for Stocks's state law claims, a district court "may decline to exercise supplemental jurisdiction . . . if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Because the parties are not completely diverse, the court has dismissed all claims over which it has original jurisdiction. The court declines to exercise supplemental jurisdiction over Stocks's remaining claims, all of which arise under North Carolina law. See id.; Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 394 (4th Cir. 2012); Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995). Accordingly, the court dismisses without prejudice Stocks's state law claims. Stocks can seek to pursue such claims in state court.

III.

In sum, the court GRANTS in part defendants' motion to dismiss [D.E. 32], DISMISSES Stocks's Title VII claims, and DECLINES to exercise supplemental jurisdiction over Stocks's state law claims. The clerk shall close the case.

SO ORDERED. This 21 day of May 2019.

                                                  JAMES C. DEVER III
                                                  United States District Judge